Melanie E. DAMIAN, as Receiver for the Estate of Aubrey Lee Price, PFG, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (a Florida limited liability company), Montgomery Asset Management, LLC (a Georgia limited liability company) f/k/a PFG Asset Management, LLC, and PFGBI, LLC, Plaintiffs,

v.

MONTGOMERY COUNTY BANK-SHARES, INC. and Trae D. Dorough, Charles T. Clements, Larry D. Coleman, Mary Jeanne Fulmer, Gregory A. Morris, Lloyd Moses, Thomas A. Peterson, William J. Peterson, Thomas A. Peterson III, Miller Peterson Robinson, John L. Robison, Jr., Dee Ann McDaniel, and Blanche Carswell, in their individual corporate capacities, Defendants.

Civil Action No. 1:12–cv–4472–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 8, 2013.

Guy F. Giberson, Kenneth Dante Murena, Damian & Valori LLP, Miami, FL, John Michael Hamrick, Paul E. Vranicar, Holland & Knight, Atlanta, GA, for Plaintiffs.

Adam Scott Rubenfield, David J. Hungeling, Law Office of David J. Hungeling, P.C., Alex Benjamin Kaufman, Robert J. Kaufman, Kaufman Miller & Forman, P.C., Atlanta, GA, Theodore Joseph Sawicki, Alston & Bird, LLP–GA, Andrew Townsend Sumner, Alston & Bird, LLP–ATL, Atlanta, GA, for Defendant.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This securities-fraud case comes before the Court on the individual Defendants'[1] and Montgomery County Bankshares, Inc.'s motions to dismiss the amended complaint for failure to state a claim [26, 28].

## I. Background

### A. Statement of Facts[2]

Defendant Montgomery is a holding company for Montgomery Bank & Trust, a federally licensed bank in Georgia. The individual Defendants are directors (and in some cases senior officials) of Montgomery and the bank. In early 2010, Montgomery wanted to sell controlling interest in the company, so it marketed the sale of common stock principally through a confidential private placement offering memorandum (PPM) dated April 9, 2010. Among other things, the PPM included an unaudited consolidated balance sheet as of December 31, 2009. "Loans, less allowance for loan losses" constituted the lion's share of Montgomery and the bank's combined

assets—$154.5 million of $247.9 million, or 62.3 percent. According to the PPM, "allowance for loan losses" meant "an estimated allowance that we believe will be adequate to absorb losses inherent in the loan portfolio based on evaluations of its collectability" in light of several factors, including the "overall portfolio quality, specific problem loans and commitments and current anticipated economic conditions that may affect the borrower's ability to pay." This allowance was $1.88 million as of December 31, 2009.

In late spring or early summer 2010, Montgomery began negotiating with Aubrey Price, a financial advisor who managed the investment fund PFG, LLC and offered investment advice through PFG Asset Management, LLC (later Montgomery Asset Management, LLC). Price became interested in purchasing controlling interest of Montgomery and formed PFGBI, LLC to pool funds from his clients that would be invested in Montgomery.

On September 28, 2010, PFGBI executed a subscription agreement with Montgomery whereby it committed to pay $5.1 million and to raise $5.1 million from a private placement to purchase the bulk of Montgomery's common stock. To gain approval for the sale, representatives from Montgomery and PFGBI met several times with banking regulators. At an October 2010 meeting, Montgomery represented that its loan portfolio value had dropped $17.5 million to $137 million, an 11.3 percent decline in just ten months.

---

1. Trae D. Dorough, Charles T. Clements, Larry D. Coleman, Mary Jeanne Fulmer, Gregory A. Morris, Lloyd Moses, Thomas A. Peterson, William J. Peterson, Thomas A. Peterson III, Miller Peterson Robinson and John L. Robison, Jr.

2. At the motion-to-dismiss stage, the Court accepts the factual allegations in the com-

plaint as true and construes them in the light most favorable to Damian. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). This statement of facts is derived from the amended complaint [18] and Damian's brief in opposition to the individual Defendants' motion to dismiss [35], which contains facts not pleaded in the amended complaint.

Two months later PFGBI revised the subscription agreement and agreed to pay the entire purchase price of $10.2 million for approximately 75 percent of Montgomery's common stock. The transaction closed December 31, 2010.

On May 31, 2012, just weeks before the FDIC's takeover, the loan portfolio's value totaled $100 million.

## B. Procedural History

On July 11, 2013, in lieu of a response to the individual Defendants' June 24 motion to dismiss, Plaintiff Melanie Damian, who serves as the receiver for the estate of Aubrey Price and several legal entities,[3] filed an amended complaint alleging that the value of the bank's loan portfolio was significantly overstated "in the PPM and elsewhere ... by more than $50 million." She claims that Montgomery violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder and that the individual Defendants violated § 20(a) of the Exchange Act. She also claims that Montgomery and the individual Defendants committed common-law fraud and negligent misrepresentation. For each claim she seeks damages of $10.2 million (the amount of PFGBI's investment) plus interest and attorneys' fees.

The individual Defendants have moved to dismiss the amended complaint for failing to state a claim. They make four arguments. First, the Court lacks subject-matter jurisdiction because the amended complaint does not set forth well-pleaded facts establishing a nexus with interstate commerce. Second, the amended complaint fails to meet the heightened-pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities

Litigation Reform Act of 1995 (PSLRA). Third, without a well-pleaded securities claim against Montgomery, the alleged primary violator, the securities claim against the individual Defendants necessarily fails. And fourth, absent a well-pleaded federal claim, the state-law claims should be dismissed.

Montgomery has also moved to dismiss the amended complaint for failure to state a claim. Montgomery adopted the individual Defendants' arguments and added another: no party that Damian represents could have reasonably relied on loan-portfolio-valuation numbers in the PPM that were "unaudited, out of date, and subject to numerous disclaimers and exceptions."

The crux of Damian's response is that the amended complaint meets the heightened-pleading requirements under Rule 9(b) and the PSLRA. And insofar as the Court identifies defects in the amended complaint, she "respectfully requests leave to amend to correct any deficiency."

## II. Jurisdiction

The individual Defendants contend that Damian has failed to plead facts sufficient to establish this Court's subject-matter jurisdiction. Federal Rule of Civil Procedure 8(a)(1) governs whether federal jurisdiction is well pleaded; that is, the complaint must include "a short and plain statement of the grounds for the court's jurisdiction." The amended complaint does.

In a securities-fraud case under § 10(b) and Rule 10b–5, federal-question jurisdiction exists where the defendant accomplished the alleged violation "directly or indirectly, by use of any means or instru-

---

**3.** PFG, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (a Florida limited liability company), Montgomery Asset Management, LLC (a Georgia limit- ed liability company) f/k/a PFG Asset Management, LLC and PFGBI, LLC. The Court appointed Damian the receiver in a previous case (No. 12–cv–2296–TCB).

mentality of interstate commerce or of the mails, or of any facility of any national securities exchange." 15 U.S.C. § 78j; *see also Woodward v. Metro Bank of Dall.,* 522 F.2d 84, 93 n. 19 (5th Cir.1975).

██ This is an exceedingly low threshold. For instance, to satisfy this requirement the defendant need only make use of an instrumentality of interstate commerce—such as telephone or email service—or the mails in connection with the alleged fraud. *See, e.g., Gower v. Cohn,* 643 F.2d 1146, 1152 (5th Cir. Unit B 1981) (holding use of a telephone sufficient); *Bunnell v. Netsch,* No. 3:12–cv–3740–L, 2013 WL 2494987, at *7 (N.D.Tex. June 11, 2013) (holding that "it is beyond debate that the Internet and email are facilities or means of interstate commerce" (quoting *United States v. Barlow,* 568 F.3d 215, 220 (5th Cir.2009)) (alterations omitted) (internal quotation marks omitted)).

██ Damian alleges that Montgomery engaged in interstate commerce by selling and marketing its securities (shares of common stock) to residents of other states and that it used the mails and email while doing so. Nothing else is required. Thus, the Court denies the individual Defendants' request to dismiss the amended complaint on the basis that Damian fails to allege a sufficient connection to interstate commerce.

## III. Legal Standard

██ A claim will be dismissed under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1199 (11th Cir.2012). The Supreme Court has explained this standard as follows:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted); *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1325 (11th Cir.2012). Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. And while all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas,* 643 F.3d 1300, 1302 (11th Cir.2011), the court need not accept as true plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

██ Additionally, because this case involves federal securities fraud, Damian's amended complaint must satisfy the special-pleading standard of Rule 9(b) and the heightened-pleading standard of the PSLRA to survive Montgomery's and the individual Defendants' motions to dismiss. *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir.2011).

## IV. Discussion

Section 10(b) and Rule 10b–5 make it unlawful for an individual to employ a manipulative or deceptive device in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. To state a securities-fraud claim under these provisions, a plaintiff

must allege "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir.2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). Here, Montgomery and the individual Defendants argue that Damian's § 10(b) and Rule 10b–5 claim should be dismissed because Damian fails to adequately allege a material misstatement, a "strong inference" of scienter, justifiable reliance on the misstatement, and loss causation.

### A. The Material Misrepresentation

#### 1. The Pleading Standard

Rule 9(b) and the PSLRA set the standard for pleading a material misrepresentation. First, the complaint must *"precisely"* identify each allegedly misleading statement—its content, when and where it was made, and who was responsible for making it. 15 U.S.C. § 78u–4(b)(1); *FindWhat Investor Grp.*, 658 F.3d at 1296 (emphasis added). Second, the complaint must specify why the statement is misleading and how it misled the plaintiff, and if the plaintiff's allegation that the statement is misleading is made on "information and belief," then the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *see also FindWhat Investor Grp.*, 658 F.3d at 1296. Finally, the complaint must specify what the defendant gained as a result of making the false or misleading statement. *FindWhat Investor Grp.*, 658 F.3d at 1296.

### 2. Whether the Allegations in the Complaint Are "Made on Information and Belief"

The PSLRA is clear: if the plaintiff alleges that the defendant company made a misstatement or omission "on information and belief," then the plaintiff must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Any allegation in a federal securities-fraud case that is not based on the plaintiff's personal or firsthand knowledge is based on information and belief. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 351 & n. 70 (5th Cir.2002) (holding that the PSLRA's pleading requirements applied because the allegations in the complaint were "not based upon [the plaintiffs'] personal knowledge and are therefore necessarily pleaded on 'information and belief,' although not labeled as such"); *Carpenters Health & Welfare Fund of Phila. v. Coca–Cola Co.*, No. 1:00–cv–02838–WBH, 2002 WL 34089163, at *14 (N.D.Ga. Aug. 20, 2002) (noting that "any allegation that is not based on first hand knowledge is necessarily based on information and belief").

The parties dispute whether all of Damian's allegations are made on information and belief. She asserts that only her statement about how much money the FDIC provided after its takeover is made on information and belief. The individual Defendants counter that all of her allegations are based on information and belief, since she was not appointed the receiver until August 10, 2012—long after any alleged misstatement of the loan portfolio's value.

But does the fact that Damian was not present for any alleged misstatement necessarily preclude her from having personal knowledge? She doesn't think so. She contends that she has firsthand knowledge to support her allegation that the bank's

loan portfolio was overvalued based on her "extensive evaluation of the Receivership Entities' books and records." She concludes that she "has seen more than sufficient evidence to justify the allegation." But according to Damian, she could not plead the facts from these sources or disclose what sources she reviewed in the amended complaint because this information "came in part from internal audit reports that [she] was required to keep confidential as a condition to obtaining the information." Without addressing Damian's assertion that her nondisclosure results from the confidential nature of the information she possesses, the individual Defendants reply that she "should have no problem stating with particularity all facts on which her allegations are formed" given her extensive review of records and books.

Thus, the Court must decide whether allegations based on a receiver's personal review of confidential information is nonetheless "made on information and belief" for purposes of determining the pleading requirements under § 78u–4(b)(1).

### a. Whether Allegations Based on the Receiver's Investigations Are Made on Information and Belief

Although no cases address whether a receiver's investigation of the receivership entity's books and records gives rise to personal or firsthand knowledge for purposes of § 78u–4(b)(1), many cases have addressed whether allegations based on the investigations of counsel are based on information and belief. Those cases generally hold that they are. *See, e.g., Adams v. Kinder—Morgan, Inc.*, 340 F.3d 1083, 1098 (10th Cir.2003) ("Because the plaintiffs' complaint refers to the investigation of their counsel as the basis for their allegations, we treat their complaint as having been made on information and belief."); *ABC Arbitrage Plaintiffs Grp.*, 291 F.3d at 351 n. 70 ("We also agree with those courts

which have held that allegations made on 'investigation of counsel' are equivalent to those made on 'information and belief' for the purposes of the heightened pleading requirements under [the PSLRA]."); *In re Theragenics Corp. Sec. Litig.*, 105 F.Supp.2d 1342, 1351 (N.D.Ga.2000) ("The Court has reviewed the cases on point and agrees with those that hold that allegations based on the investigations of counsel are the equivalent of allegations based on information and belief.").

██ Why this is so is succinctly stated in *Malin v. XL Capital Ltd.*, 499 F.Supp.2d 117 (D.Conn.2007), a case where all of the plaintiff's allegations were based on counsel's investigation of SEC filings, analyst reports, press releases, corporate documents and interviews with confidential witnesses.

> For purposes of § 78u–4(b)(1), the phrase "investigation of counsel" is meaningless. Because "no amount of investigation can transform information and belief—hearsay, essentially—into personal knowledge," allegations based on the investigation of counsel are deemed to be made on "information and belief," and therefore are subject to § 78u–4(b)(1)'s particularity requirement.

*Id.* at 136 n. 16 (internal citations omitted).

██ The Court can discern no reason to treat the investigations of receivers and counsel differently. Here, for instance, Damian states that her allegations are based on her extensive review of the same type of documents as the counsel in *Malin:* corporate records. The only wrinkle is that most of these are documents are confidential. Yet no matter how extensively or thoroughly she reviewed these documents, one simple fact remains: she lacks personal knowledge of the value of the bank's loan portfolio at the time Montgom-

ery allegedly misstated it. The Court thus holds that her allegations are made on information and belief for purposes of the PSLRA.

But this is only half of an answer. To determine whether Damian's allegations satisfy the PSLRA's pleading standard, the Court next considers what must be included in the complaint to do so.

### b. What Must Be Disclosed?

■ Despite the plain language of § 78u–4(b)(1), most courts—including this Court—do not construe that section to require that the plaintiff specifically plead "all facts" that gave rise to an allegation based on information and belief. For example, after an extensive review of the PSLRA, its history and numerous decisions, this Court in *In re Theragenics Corp. Sec. Litig.*, 105 F.Supp.2d at 1355, agreed with the conclusion of the Second Circuit: "[N]otwithstanding the use of the word 'all,' [§ 78u–4](b)(1) does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, plaintiffs need only plead with particularity *sufficient* facts to support those beliefs," *Novak v. Kasaks*, 216 F.3d 300, 313–14 (2d Cir.2000). Thus, plaintiffs in securities-fraud cases in this Court can satisfy this pleading requirement by

> references to internal memoranda or other documents, press releases, news articles and government-mandated filings. A plaintiff at this stage of the litigation, however, need not provide the names of either corporate whistle-blowers, customers of the defendant, or even outside consultants who provided factual

support for the allegations, provided that there are other facts that provide an adequate basis for believing that the defendants' statements were false.

*In re Theragenics Corp. Sec. Litig.*, 105 F.Supp.2d at 1355.

■ The Eleventh Circuit has never considered what information must be included in a securities-fraud complaint when the plaintiff seeks to rely on confidential documents. But other circuits have. Those cases have arrived at the following rule: A plaintiff who makes allegations based on documentary evidence—whether confidential or not—"needs to specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them." *ABC Arbitrage Plaintiffs Grp.*, 291 F.3d at 356 (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001)) (internal quotation mark omitted). Consequently, an "unsupported general claim of the existence of confidential sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss." *Id.* at 355–56 (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir.1996)) (internal quotation marks omitted). Similarly, an allegation is wholly conclusory and lacks data to support it where a plaintiff "fail[s] to identify who authored the alleged report, when it was authored, who reviewed the report, and what data its conclusions were based upon." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004).

■ These cases are persuasive.[4] Thus, an allegation based on confidential

---

4. Should the Eleventh Circuit consider this issue, the Court believes that it will agree. After all, this rule is consistent with the circuit's reasoning in *Mizzaro*, 544 F.3d 1230.

The *Mizzaro* court considered how allegations derived from statements of unidentified, confidential witnesses—statements that laid "one of the main building blocks of the amended

documents satisfies the PSLRA's pleading requirement where the complaint sets forth sufficient information about the documents to allow both the court and the defendants to understand the foundation or basis for the plaintiff's belief.

The Court now turns to Damian's allegations.

### 3. Damian's Allegations

■ Damian alleges that while Montgomery was attempting to sell controlling interest in the company, it falsely stated the value of the bank's loan portfolio on two occasions: first, in the April 2010 PPM, and second, during an October 2010 meeting with banking regulators.[5] In both instances, she contends, Montgomery overstated the value of the bank's loan portfolio by at least $50 million. This overstatement allegedly occurred because Montgomery misrepresented the true value of the allowance for loan losses—at least in the PPM.[6] In her brief Damian claims that she "has seen more than suffi-

cient evidence to justify this allegation" based on her "extensive evaluation of the Receivership Entities' books and records."

Yet after carefully reviewing both the amended complaint and her brief, the Court finds that Damian marshals only two facts to support her allegation. The first is her belief that when the FDIC took over the bank in June 2012—seventeen months after PFGBI purchased controlling interest of Montgomery—it provided $70 million to cover the insured deposits.[7] In her estimation, this shows that the valuation of Montgomery's total assets must have been way off (by about $70 million) and that Montgomery's largest asset—the bank's loan portfolio—"must have been massively exaggerated (probably by over $50 million), even though it was $37 million less than it was when PFGBI agreed to purchase [controlling interest of Montgomery]." The second is an audit report. According to a footnote in her brief, she reviewed a report which states that be-

---

complaint" in that case—should be evaluated. The court rejected a per se rule that the names of confidential sources must be disclosed in a securities-fraud complaint "so long as the complaint unambiguously provides in a cognizable and detailed way the basis of the whistleblower's knowledge." *Id.* at 1239–40. The court further held that how much weight a court should afford confidential information turns on the facts of each case.

We conclude that the weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case, and confidentiality is one factor that courts may consider. Confidentiality, however, should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge....

*Id.* at 1240. Thus, allegations based on confidential personal sources are well pleaded so long as "in a cognizable and detailed way" the complaint "fully describes the foundation or basis the witness's knowledge."

**5.** Nowhere in the amended complaint does Damian allege that Montgomery omitted essential information. In her brief, however, she suggests that her claim relates to an alleged omission. This mischaracterizes the nature of her claim—at least in the amended complaint. But whether her claim is based on an alleged misrepresentation or omission by Montgomery makes little difference; the Court's analysis remains the same.

**6.** Damian never explicitly says that this is the reason for the October 2010 overvaluation. Damian seems to treat the alleged overstatement of the loan portfolio's value as *a single* misstatement rather than separate misstatements that are each subject to the pleading requirements of Rule 9(b) and the PSLRA.

**7.** As of May 31, 2012, the bank's outstanding deposits totaled $157 million; the bank's loan portfolio was valued at $100 million; and Montgomery's total assets were valued at $166 million.

tween April and October 2010 "between 27% and 36% of the bank's loans were classified as either 'substandard,' 'doubtful,' or 'loss.'" Based on this report she concludes that "the loan losses should have been projected to be more than ten times higher than reported." Damian contends that these facts satisfy the heightened-pleading standards of Rule 9(b) and the PSLRA.

Contrary to Damian's contention, her § 10(b) and Rule 10b–5 claim is not well pleaded. All of her allegations—including her allegation that Montgomery made a material misstatement—are made on information and belief. But the amended complaint includes no information that allows the Court to understand the foundation or basis for her belief that Montgomery falsely stated the value of the loan portfolio in the April 2010 PPM or the October 2010 meeting with banking regulators. Thus, the amended complaint must be dismissed for failure to plead a material misstatement or omission with sufficient particularity. The Court, however, will grant Damian leave to file a second amended complaint that cures this and the other the pleading deficiencies described below.

### B. A Strong Inference of Scienter

### 1. The Pleading Standard

While Rule 9(b) permits scienter to be plead generally, the PSLRA imposes a higher standard: the plaintiff in a securities-fraud case must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The plaintiff must allege facts that create a strong inference of scienter for each defendant and each alleged violation of the statute. *Mizzaro*, 544 F.3d at 1238. And to plead corporate scienter, the plaintiff must allege facts that engender a

strong inference "that *somebody* responsible for the allegedly misleading statements must have known about the fraud." *Id.* at 1254.

To satisfy the scienter element, the defendant must have acted with either "intent to deceive, manipulate, or defraud" or "severe recklessness." *Id.* at 1238 (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 (11th Cir.1999)) (internal quotation marks omitted). The Eleventh Circuit describes "severe recklessness" as

those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* (quoting *Bryant*, 187 F.3d at 1282 n. 18).

In other words, to adequately plead scienter for a securities-fraud claim, the plaintiff must set forth " 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were seriously reckless when they made the allegedly materially false or incomplete statements." *Id.* And the inference of scienter is "strong" when it is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

To determine whether scienter is well pleaded, a court follows a three-step approach: (1) it accepts as true all allegations in the complaint; (2) it considers the complaint holistically along with the other

sources ordinarily examined in ruling on a Rule 12(b)(6) motion to dismiss; and (3) it considers plausible opposing inferences. *Id.* at 322–23, 127 S.Ct. 2499. In short, the court must ask: "When the allegations are accepted as true and taken collectively, *would* a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326, 127 S.Ct. 2499 (emphasis added); *see also Mizzaro,* 544 F.3d at 1239 (contrasting this inquiry with the summary-judgment inquiry of whether reasonable jurors *could* find that the plaintiff is entitled to a verdict).

## 2. Analysis

Damian's brief posits that the amended complaint raises a strong inference of scienter. To reach this conclusion, she seizes first on the size of the alleged misstatement ($50 million), noting that it is nearly five times the amount that PFGBI paid for controlling interest of Montgomery.[8] She next notes that because the individual Defendants were each senior officers or directors of Montgomery and the bank, each of them must (or should) have known the amount of "the true loan loss calculation." To bolster this allegation, she points to some of the requirements imposed in the October 6, 2009 order that Montgomery entered into with the FDIC and Georgia Department of Banking and Finance.[9] Under that order, the bank's board of directors had "to increase its participation in the affairs of the Bank to ensure the Bank's compliance with the Order." And the board had to "establish a management plan that ensure[d] the independent member of the Bank's Board of Directors provide[d] supervision over the lending, investment and operating policies of the Bank." Damian concludes that this order imposed a duty on each member of the board of directors to oversee the bank's lending practices, which in turn meant that they "had direct knowledge that the Bank's loan portfolio did not accurately reflect [Montgomery's] true projections about loan losses."

Neither the amended complaint nor Damian's brief suggests that Montgomery intended to defraud potential investors. Thus, to adequately plead a strong inference of scienter, the amended complaint must establish that Montgomery was severely reckless in projecting the amount of loan losses. It does not.

▮ Put simply, Damian seeks to conclude from two disjointed pieces of information—the audit report she cites and her belief that the FDIC provided $70 million after its takeover—that the reported valuations of the loan portfolio were false and that this falsity was so obvious that anyone responsible for making them either knew or was severely reckless in not knowing that they were false. But unlike in *Mizzaro,* where the facts alleged in the amended complaint, if accepted as true, established the existence of a fraudulent scheme, the two facts upon which Damian relies do not even establish that Montgomery's alleged misstatements were false when they were made.

More importantly, even if they did, they do not establish that a reasonable person *would* infer that there is at least a 50 percent chance the individual Defendants either approved of the alleged fraud (and thus always knew about it), learned about it sometime before October 2010 (the date of the last alleged misstatement), or were

---

**8.** In another place, Damian notes that the alleged misstatement means that the loan portfolio's value was overstated by 30 to 40 percent.

**9.** Although she does not mention the October 6, 2009 order in the amended complaint, it is referenced in an exhibit thereto, the PPM.

otherwise severely reckless in not learning about it during the period when Montgomery was marketing controlling interest in the company for sale. *See Mizzaro,* 544 F.3d at 1247.

In *Mizzaro,* the Eleventh Circuit held that an amended complaint that "relie[d] exclusively on the widespread nature of the fraud, and the purported amount of the fraud, to draw a strong inference that the individual defendants (all high-ranking officials) acted with the requisite scienter" did not satisfy the scienter element. *Id.* For example, the plaintiffs had not cited any "documentation, communication, or conversation suggesting that the high-ranking defendants knew anything about the alleged fraud." *Id.* at 1250. Nor was the amount of the alleged fraud pleaded with sufficient specificity. *See id.* at 1251 ("[E]ven assuming the fraud was widespread, we have no reliable way of estimating its total amount, let alone inferring from the dollar amount the knowledge of senior management."). Thus, to adequately plead a strong inference of scienter Damian needs to plead facts that connect the individual Defendants with the allegedly false statements.

Damian's attempt to do so through the October 6 order fails. To be sure, the FDIC's investigation uncovered several areas of concern, which were identified in the October 6 order, including "the volume and quality of the Bank's loans; the Bank's operation with an excessive volume of adversely classified assets; [and] the adequacy of the Bank's allowance for loan and lease losses." For this reason, and as noted in the PPM, the October 6 order required the board of directors to take specific actions. For example, the bank had to "maintain a fully funded allowance for loan and lease losses; implement an effective system of grading and reviewing the Bank's loan portfolio; ... establish a comprehensive plan for determining the adequacy of the Bank's allowance for loan and lease losses; ... [and] implement a written lending and collection policy to provide guidance over the Bank's lending function," among other things. Additionally, the order mandated that the bank charge-off or collect any loan classified as "loss" and 50 percent of loans classified as "doubtful," and it prohibited the bank from extending any credit to borrowers whose loans had been charged-off or were classified as "loss," "doubtful" or "substandard."

In short, the October 6 order paints an unhappy picture of the bank's financial condition as of May 4, 2009, the date of the FDIC's investigation. Indeed, the FDIC's findings and the remedial measures it ordered reveal that the bank was struggling to remain adequately capitalized and that the bank's allowances for loan losses may have been undervalued. But rather than hiding these adverse facts from potential investors like PFGBI, Montgomery explicitly disclosed them in the PPM.

Even after considering the amended complaint holistically, the brief Damian filed and the PPM, and treating the facts alleged as true (even though they are improperly pleaded), the amended complaint fails to satisfy the strict pleading requirements of the PSLRA. At most the October 6 order gives rise to an inference that the bank's officers and directors had been negligent—perhaps even inexcusably so—in overseeing how and ensuring that the bank properly determined the allowance for loan losses before the entry of that order. But under the PSLRA a showing of negligence is not enough to support a strong inference of scienter. *See Mizzaro,* 544 F.3d at 1238.

**C. Justifiable Reliance on the Material Misrepresentation**

In a securities-fraud case, the plaintiff must show "justifiable reliance" on

the material misstatement. *See SEC. v. Morgan Keegan & Co.,* 678 F.3d 1233, 1244 (11th Cir.2012) (noting that in a private enforcement action "the plaintiff must show 'justifiable reliance' on the material misstatement" (citing *Bruschi. v. Brown,* 876 F.2d 1526, 1529 (11th Cir.1989))); *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 638 (11th Cir.2010) ("[J]ustifiable reliance on a misrepresentation is a prerequisite to a Rule 10b-5 recovery."). For purposes of a federal securities-fraud claim, "justifiably relied" has a meaning equivalent to "reasonably relied." *Ledford v. Peeples,* 657 F.3d 1222, 1248 n. 80 (11th Cir.2011).

■ To prove justifiable reliance on the misrepresented or omitted information, Damian must show that "with the exercise of reasonable diligence [PFGBI] still could not have discovered the truth behind the fraudulent omission or misrepresentation." *Gochnauer v. A.G. Edwards & Sons,* 810 F.2d 1042, 1047 (11th Cir.1987). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he is aware of a company's statement and engaged in a relevant transaction— *e.g.,* purchasing common stock—based on that specific misrepresentation." *Erica P. John Fund, Inc. v. Halliburton Co.,* — U.S. —, 131 S.Ct. 2179, 2185, 180 L.Ed.2d 24 (2011).

Damian fails to adequately plead reliance even under the minimal notice-pleading standard of Rule 8(a). As discussed, she has not adequately pleaded a material misrepresentation and thus cannot adequately plead reliance. *See Morgan Kee-*

*gan,* 678 F.3d at 1244. The Court therefore need not address Montgomery and the individual Defendants' additional arguments that Damian did not sufficiently plead reliance.[10]

### D. Loss Causation

■ Under the PSLRA, a plaintiff has the burden of proving that the act or omission of the defendant proximately caused the plaintiff's injury. *See Dura Pharm.,* 544 U.S. at 340, 125 S.Ct. 1627; *see also* 15 U.S.C. § 78u–4(b) (requiring proof that the misrepresentation "caused the loss for which the plaintiff seeks to recover"). Loss causation refers to the link between the defendant's misconduct and the plaintiff's economic loss; thus, the plaintiff must show that "the untruth was in some reasonably direct, or proximate, way responsible for his loss." *In re Coca–Cola Enters., Inc. Sec. Litig.,* 510 F.Supp.2d 1187, 1203 (N.D.Ga.2007).

■ Allegations of loss causation in a securities-fraud case need only satisfy Rule 8(a)(2). *In re HomeBanc Corp. Sec. Litig.,* 706 F.Supp.2d 1336, 1361 (N.D.Ga. 2010) (citing *Dura Pharm.,* 544 U.S. at 346, 125 S.Ct. 1627). To adequately plead this element, the plaintiff must allege that the share price of the security at issue "fell significantly after the truth became known," *Dura Pharm.,* 544 U.S. at 347, 125 S.Ct. 1627, or that the defendant's misstatements concealed a foreseeable risk that ultimately materialized and "negatively affected the value of the security," *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161,

**10.** The Court, however, notes that there is a difference between the evidence needed to survive a motion for summary judgment or judgment as a matter of law and what must be alleged to satisfy Rule 8(a). This explains why failure to sufficiently plead reliance is rarely a basis for granting a motion to dismiss, but failure to establish reliance is often

a basis for granting a motion for summary judgment. *See* 5 ALAN R. BROMBERG ET AL., BROMBERG & LOWENFELS ON SECURITY FRAUD § 7:443 (West 2013) ("Since it involves fact questions, courts often decline to dismiss under [Rule] 12(b)(6) for failure to state a claim. The reliance issue is more commonly resolved on summary judgment or at trial.").

173 (2d Cir.2005). In doing so, the plaintiff need not allege that the defendant's misstatement was the "sole and exclusive cause" of her damages; but she must allege that the defendant's conduct was a "substantial" or "significant contributing cause." *FindWhat Investor Grp.,* 658 F.3d at 1309 (quoting *Robbins v. Koger Props., Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997)) (internal quotation marks omitted). Thus,

> even if a defendant's misconduct induces the plaintiff to make the investment, if the plaintiff's loss is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operated to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b–5.

*Patel v. Patel,* 761 F.Supp.2d 1375, 1381 (N.D.Ga.2011). At the motion-to-dismiss stage, dismissal is required if the plaintiff offers no facts that distinguish "between losses caused by the defendants' alleged misrepresentations and the intervening events that wreaked havoc on the banking industry as a whole." *Id.*

Damian contends that the amended complaint meets this standard because it includes an allegation that "PFGBI would not have invested in [Montgomery] if it would have known that [Montgomery]'s representations about loan loss projections were off by $50 million." [35 at 19]. She further contends that PFGBI's losses were caused by the alleged false statements rather than the bank's closing.

The individual Defendants argue that the outcome in this case should be the same as in *Patel* because Damian has failed to plead facts that show that the losses of the estate of Aubrey Price and the receivership entities were caused by Montgomery's conduct rather than intervening events.

■ Damian has not adequately pleaded loss causation. She attempts to distinguish *Patel* by contending that it was the alleged overvaluation of the bank's loan portfolio, not the FDIC's takeover in June 2012, that rendered the securities PFGBI purchased worthless. But this attempt falls flat for two reasons. First, she has not adequately pleaded a material misstatement. Second, she has not pleaded facts that if proven would establish that the common stock PFGBI purchased on December 31, 2009 was worthless. Nor has she pleaded any facts that if proven would distinguish the losses that were the result of the alleged overvaluation of the bank's loan portfolio from those that were the result of intervening events unrelated to Montgomery's conduct. Thus, even under the minimal pleading standard of Rule 8(a), Damian has failed to adequately plead that the alleged misstatements were a substantial or significant contributing cause of her damages.

In sum, Damian has failed to sufficiently plead a misstatement or omission of material fact, a strong inference of scienter, reliance on the alleged misstatement, and loss causation. As a result, her claim under § 10(b) and Rule 10b–5 against Montgomery must be dismissed.

### E. Secondary Liability Under § 20(a)

■ Section 20(a) of the Exchange Act provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter … shall … be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a). This statute "imposes derivative liability on persons that control primary violations of the Act." *Laperriere v. Vesta Ins. Group, Inc.,* 526 F.3d 715, 721 (11th Cir.2008). A primary violation of the securities laws is an

essential element of a § 20(a) claim for derivative liability. *Rosenberg v. Gould,* 554 F.3d 962, 967 (11th Cir.2009). Therefore, "[b]ecause the complaint fails to allege primary liability under section 10(b), there can be no secondary liability under section 20(a)." *Id.* Damian's complaint therefore fails to state a federal securities claim against the individual Defendants.

### F. Jurisdiction over the State–Law Claims

The amended complaint also includes state-law claims for negligent misrepresentation and common-law fraud. Damian has not alleged that the Court has original subject-matter jurisdiction over these claims but rather asks that the Court exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). Because the Court "has dismissed all claims over which it has original jurisdiction," the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* § 1367(c)(3); *see also Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir.1997) ("State courts, not federal courts, should be the final arbiters of state law."). Damian's state-law claims are accordingly dismissed without prejudice.[11]

### V. Conclusion

The individual Defendants and Montgomery's motions to dismiss for failure to state a claim [26, 28] are GRANTED WITHOUT PREJUDICE. Damian is granted leave to file, on or before November 27, 2013, a second amended complaint that cures the deficiencies discussed above.

---

**11.** The Court notes that because Damian's state-law claims have elements that overlap with her § 10(b) and Rule 10b–5 claim, these claims are also not well pleaded.