[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 9, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12392

_____

D. C. Docket No. 06-01894-CV-CC-1

RUTH ROSENBERG,
Individually and on behalf of all others similarly
situated,

Plaintiff,

WITNESS SYSTEMS INVESTOR GROUP,

Plaintiff-Appellant,

versus

DAVID B. GOULD,
NICHOLAS DISCOMBE,
WILLIAM EVANS,
JOEL G. KATZ,
THOMAS J. CROTTY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 9, 2009)**

Before BIRCH and PRYOR, Circuit Judges, and STROM,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents the issue whether a complaint satisfies the heightened standard for pleading scienter, under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), when the complaint alleges that a chief executive officer who had granted backdated options in 2000 and 2001 later signed security filings and made other statements that minimally overstated earnings between 2004 and 2006. Shareholders who purchased stock of Witness Systems, Inc. between April 23, 2004, and August 11, 2006, filed a putative class action against Witness and its former chief executive, David B. Gould, for securities fraud in violation of section 10(b) of the Securities Exchange Act and Rule 10b-5 and against Gould for violation of section 20(a), id. § 78t(a). The amended complaint alleged fraudulent reporting that caused the putative class economic harm when they bought shares at an inflated price. The district court dismissed the complaint with prejudice for failure to satisfy the heightened standard for pleading scienter and loss causation and denied a request by the class for leave to amend the complaint sub silentio. Because we conclude that the complaint fails to satisfy the standard for pleading scienter, we affirm.

[*]Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

## I. BACKGROUND

From 2001 until the end of 2006, Gould was the chairman of the board of directors and chief executive officer of Witness. Before July 2001, Gould was the sole person responsible for granting stock options to non-officers who were employees below the rank of senior vice president. Gould allegedly granted and received thousands of backdated options. When Gould granted and received backdated options in 2000 and 2001, he signed filings for the Securities and Exchange Commission that represented that the options were granted at fair market value and did not need to be recorded as a compensation expense. During the class period, Gould allegedly misrepresented that revenue and earnings per share exceeded expectations and signed financial statements of Witness. Gould sold 38.9 percent of his stock during the class period for more than nine million dollars.

On May 17, 2006, Deutsche Bank publicly questioned the historical options grants of Witness. By May 19, Witness stock had fallen by $1.14 per share. Witness voluntarily investigated its historical practices but did not announce this investigation until July 27, 2006. Witness explained that the investigation would possibly result in adjustments to the financial statements of earlier periods. The next day, the share price dropped from $18.19 to $15.75.

On August 9, 2006, Witness announced that a special committee of its board

3

had found discrepancies in the recorded grant dates of historical options and that it would record additional non-cash expenses in periods before 2005 for a total of approximately ten million dollars. On August 9, the share price dropped from $14.93 to $13.48. On February 8, 2007, six months after the end of the class period, the company issued a restatement that admitted that "substantially all grants issued prior to 2002" had inaccurate measurement dates and that it would record an additional 9.7 million dollars in stock-based compensation expenses.

Ruth Rosenberg, a shareholder of Witness, and the Witness Systems Investor Group filed and later amended a complaint against Witness, ten officers and directors, and an accounting firm. The defendants moved to dismiss the complaint for failure to satisfy the standard for pleading scienter and loss causation. The district court dismissed the complaint with prejudice. The shareholders appeal the dismissal of their complaint against only Witness and Gould.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. We review de novo the dismissal of a complaint for failure to state a claim. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). We review the decision of the district court to grant or deny a request for leave to amend for abuse of

4

discretion.  Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999).

## III.  DISCUSSION

Our discussion is divided in three parts.  First, we address whether the shareholders' complaint satisfies the standard for pleading scienter.  Because we hold that the complaint fails to satisfy that standard, we do not reach the question whether the complaint satisfies the standard for pleading loss causation.  Second, we address whether the complaint states a claim of secondary liability under section 20(a).  Third, we address whether the district court abused its discretion when it did not allow the shareholders to amend their complaint.

*A.  The Complaint Fails To Satisfy the Standard for Pleading Scienter.*

The Private Securities Litigation Reform Act of 1995 imposes a heightened standard for pleading scienter.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504 (2007).  A plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  "An inference of scienter must be more than merely plausible or reasonable–it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, 127 S. Ct. at 2504–05.  Three guidelines govern our review: (1) "courts must . . . accept all factual allegations as true"; (2) "courts must consider the complaint in its entirety" and

determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard"; and (3) "court[s] must take into account plausible opposing inferences." Id. at 2509. An allegation of "severe recklessness" must satisfy an exacting standard:

> "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."

Garfield v. NDC Health Corp., 466 F.3d 1255, 1264 (11th Cir. 2006) (quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1282 n.18 (11th Cir. 1999)).

The complaint alleges that, because Gould granted and received backdated stock options in 2000 and 2001, he possessed fraudulent intent during the class period when he signed filings for the Securities and Exchange Commission and overstated earnings in announcements of quarterly results. The shareholders' complaint alleges the following facts as supporting a reasonable inference of Gould's scienter: (1) "[P]rior to July of 2001, Defendant Gould . . . had the sole responsibility and authority to grant non-officer stock options"; (2) "'Inaccurate measurement dates were found to have been used for substantially all grants prior to 2002,'" and non-officers received backdated options prior to 2002; (3) "'Of the

6

total $9.7 million  additional stock-based compensation expense . . . approximately $5.5 million relate[d] to non-officer grants'"; (4) "[I]n July of 2001, the Board of Directors created the Options Committee to which Gould . . . [was] appointed . . . [and options granted by the committee] 'resulted in additional stock-based compensation expense of approximately $0.5 million'"; (5) "Gould was granted 1,196,000 options . . . much of which was either backdated or springloaded"; and (6) Gould "made materially false and misleading statements during the Class Period."  The shareholders also allege that the following facts provide circumstantial evidence of scienter: (1) Gould sold approximately 39 percent of his shares during the class period; (2) Defendants took "advantage of the artificial inflation in the price of Company shares" to acquire another company and raise additional capital through a secondary offering; and (3) "Gould resigned his positions on December 1, 2006."

These allegations are insufficient to establish an inference of fraudulent intent that is "at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 127 S. Ct. at 2505–06.  The complaint contains no allegation that Gould had any knowledge of the accounting principles relating to stock options. The inference that Gould knew that backdated options in 2000 to 2001 had led to overstated earnings during the class period in 2004 to 2006 is not as compelling as

7

the competing inference that he was unaware that backdated options had affected financial statements several years later. The impact on the financial statements during the class period consisted of an increase in non-cash expenses that was only 0.5 percent of revenue in 2004 and 0.17 percent of revenue in 2005. That de minimis change in the financial statements does not amount to a glaring "red flag" that would have put Gould on notice that he was overstating earnings when he announced the quarterly results of Witness. The complaint alleges no "glaring accounting irregularities or other 'red flags' that the financial statements contained material misstatements or omissions"; it rests "'on speculation and conclusory allegations.'" NDC Health, 466 F.3d at 1265, 1266 (quoting Hoffman v. Comshare, Inc. (In re Comshare Inc. Sec. Litig.), 183 F.3d 542, 533 (6th Cir. 1999)).

The complaint against Witness fails for the same reasons. The gravamen of the complaint is that, because options were backdated in 2000 to 2001 and because backdating is inherently intentional, Witness intentionally misrepresented earnings in 2004 to 2006. This allegation does not create an inference of intent to defraud that is more compelling than the competing inference of negligence on the part of Witness.

*B.  Because the Complaint Fails To State a Claim of Primary Liability Under Section 10(b), The Complaint Also Fails To State a Claim of Secondary Liability Under Section 20(a).*

8

Because the complaint fails to satisfy the standard for pleading scienter for the claim under section 10(b), the district court did not err when it dismissed the claim under section 20(a) of the Exchange Act, which allows for joint and several liability for "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter." 15 U.S.C. § 78t(a). To state a claim under section 20(a) a complaint must allege that primary liability under section 10(b) exists; the defendant had the "power to control the general business affairs of [the corporation]"; and the defendant had the power to "control or influence the specific corporate policy which resulted in primary liability." See Theoharous v. Fong, 256 F.3d 1219, 1227 (11th Cir. 2001) (affirming the dismissal of a section 20(a) claim where the complaint failed to allege primary liability under section 10(a)). Because the complaint fails to allege primary liability under section 10(b), there can be no secondary liability under section 20(a). See id.

C. *The District Court Did Not Abuse Its Discretion When It Denied Sub Silentio the Shareholders' Request for Leave To Amend.*

When the shareholders requested leave to amend their complaint in a footnote to their brief in opposition to the defendants' motion to dismiss, it was within the discretion of the district court to deny that request sub silentio. See United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1361–62 (11th Cir. 2006). "Where a request for leave to file an amended complaint simply is imbedded

9

within an opposition memorandum, the issue has not been raised properly."

Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999). The shareholders also failed to comply with Federal Rule of Civil Procedure 7(b) when they failed to attach a copy of their proposed amendment or to describe the substance of their proposed amendment. See Satz, 181 F.3d at 1279–80.

## IV. CONCLUSION

The dismissal with prejudice of the shareholders' complaint against Witness and Gould is **AFFIRMED.**