[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15595
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2011
JOHN LEY
CLERK

D.C. Docket No. 06-61844-CV-KAM

GEORGE DURGIN,
Individually and on Behalf of
all others Similarly Situated, et al.,

Plaintiffs,

BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND,

Plaintiff-Appellant-
Cross Appellee,

versus

ANTONIO P. MON,
DAVID J. KELLER,
RANDY L. KOTLER,

Defendants-Appellees-
Cross Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(February 18, 2011)

Before EDMONDSON, PRYOR, and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

Lead plaintiff Bricklayers & Trowel Trades International Pension Fund challenges the district court's, pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state claim), dismissing this securities-fraud action because the Pension Fund's consolidated, amended complaint did not satisfy the heightened-pleading standard imposed by the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, § 101(b), 109 Stat. 737, 743, as amended, 15 U.S.C. § 78u-4 (2006). Primarily at issue is whether the amended complaint's allegations adequately raised a "strong inference" that defendants acted with the requisite scienter. AFFIRMED.

## I.

The following is based on the allegations in the amended complaint, consistent with our *de novo* standard of review for a Rule 12(b)(6) dismissal, as discussed *infra*.

The Pension Fund, lead plaintiff in this putative class action, purchased common stock from Technical Olympic USA, Inc. (TOUSA), which built and marketed homes. TOUSA's stock ultimately lost its value, and the Pension Fund

---

[*] Honorable Rhesa Hawkins Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

2

suffered loss. Defendants served as TOUSA executive officers: Antonio P. Mon, executive vice chairman, chief executive officer, and president since 2002; David J. Keller, chief financial officer, senior vice president, and treasurer between May 2004 and May 2006; and Randy L. Kotler, vice president and chief accounting officer from June 2002 until May 2006, when he replaced Keller as chief financial officer.

In August 2005, TOUSA finalized the formation of a joint venture (JV), with Falcone/Ritchie, LLC, to acquire substantially all homebuilding assets of Transeastern Properties, Inc.—"approximately 22,000 homesites throughout all major Florida markets". The JV acquisition, which cost approximately $857 million, was funded in large part by a $675 million loan to the JV by a consortium of banks (the Lenders). The Lenders required TOUSA to guarantee it would complete certain JV construction projects should the JV default on the loan and reimburse the Lenders for losses arising from fraud, intentional misconduct, waste and misappropriation, or voluntary bankruptcy filed by any party (the guarantees). The loan equaled nearly 70 percent of TOUSA's net worth, and TOUSA lacked the liquidity to repay the debt in the event the guarantees were triggered.

Following the acquisition, defendants—in SEC filings, press releases, and analysts' conference calls—represented the loan was "non-recourse" to TOUSA, implied it was secured only by the JV's assets, and failed, until 10 March 2006, to

disclose the guarantees to investors. On 13 March 2006, TOUSA's stock closed at $18.48 per share, down from the previous day's $18.65 closing.

In November 2006, TOUSA publicly disclosed Lenders' demand letters, informing TOUSA they were aware of problems it was experiencing due to the housing market's condition and demanding it satisfy its obligations under the guarantees. The next day, TOUSA announced it was contesting its liability under the guarantees; it asserted the JV's problems stemmed only from "the inability to sell and deliver the volume of homes necessary to support the capital structure due to the downturn in the Florida housing market". As a result of this disclosure, TOUSA's stock declined from $10.79 to $7.00 per share.

The first of several securities-fraud actions against TOUSA was filed that December; they were consolidated in March 2007. That July, TOUSA settled Lenders' separate JV-loan action against it. TOUSA subsequently filed for bankruptcy; hence, it is not a defendant in this action.

The Pension Fund was designated lead plaintiff in July 2008 and, that September, filed the amended complaint at issue. The Pension Fund alleged: defendants, because of their positions with TOUSA, controlled the content of, *inter alia*, TOUSA's SEC filings, press releases, and presentations to securities analysts; and, consistent with the below-discussed standard for securities-fraud liability,

defendants intended to "deceive, manipulate, or defraud" shareholders or acted with "severe recklessness", by, *inter alia*, characterizing the JV loan as "non-recourse" to TOUSA.

In September 2009, the district court dismissed this action under Rule 12(b)(6), ruling, *inter alia*, that the amended complaint failed to adequately allege defendants "made" misleading statements, including with a "strong inference of scienter". In doing so, the court granted the Pension Fund leave to file a second amended complaint, stating that it "must include allegations that establish the element of scienter". Electing instead to appeal, the Pension Fund had the court enter a final judgment.

## II.

A Rule 12(b)(6) dismissal for failure to meet PSLRA's heightened-pleading standard is reviewed *de novo*. *E.g.*, *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236 (11th Cir. 2008). As discussed *infra*, this action is pursuant, *inter alia*, to Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated by the SEC under § 10(b) of the Securities Exchange Act of 1934, ch. 404, 48 Stat. 891, as amended, 15 U.S.C. § 78j(b) (2006).

Primarily at issue is whether the amended complaint satisfies PSLRA's standard for pleading scienter, as required for a § 10(b) claim. Because it fails to do

so, we need not decide, *inter alia*, whether defendants "made" false or misleading statements or whether the JV loan was "non-recourse" to TOUSA.

Also at issue is whether the amended complaint states a claim for "control person" liability under § 20(a) of that Act, 15 U.S.C. § 78t(a). Such liability is imposed against a "person who, directly or indirectly, controls any person liable under any provision of this chapter". 15 U.S.C. § 78t(a). "To state a claim under section 20(a)[,] a complaint must allege that primary liability under section 10(b) [of that Act] exists . . . ." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (internal quotation marks and citations omitted). Because the amended complaint fails, as discussed *infra*, to satisfy PSLRA's heightened standard for pleading scienter for the § 10(b) claim, it also fails to state a claim under § 20(a).

**A.**

Section 10(b) proscribes

> us[ing] or employ[ing], in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The SEC's resulting Rule 10b-5 forbids

6

any person, directly or indirectly, . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; *see Mizzaro*, 544 F.3d at 1236. To state a claim under that Rule, the following must be alleged: (1) a material misrepresentation or omission by defendant; (2) *made with scienter*; (3) in connection with the purchase or sale of a security; (4) plaintiff's reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *E.g.*, *Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 789 (11th Cir. 2010).

As noted, pursuant to PSLRA, there are heightened-pleading requirements for Rule 10b-5 securities-fraud actions. *See* 15 U.S.C. § 78u-4(b)(1); *Mizzaro*, 544 F.3d at 1238. For scienter, PSLRA provides: "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong inference* that the defendant acted with the *required state of mind*". 15 U.S.C. § 78u-4(b)(2) (emphasis added); *see Rosenberg*, 554 F.3d at 965. That "required state of mind" can be either an "intent to deceive, manipulate, or defraud"

7

or "severe recklessness". *Mizzaro*, 544 F.3d at 1238; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Accordingly, to survive a Rule 12(b)(6) motion, the allegations in the Pension Fund's amended complaint must give rise to a "strong inference" that defendants acted with either an "intent to deceive, manipulate, or defraud" its investors or "severe recklessness". In *Tellabs*, the Supreme Court held: for an inference that defendant acted with the requisite scienter to qualify as "strong", it "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference . . . ." 551 U.S. at 314.

Along this line, and consistent with the above-stated standard of review for Rule 12(b)(6) dismissals and the applicable law for a § 10(b) claim, the Court stated: "*First*, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must . . . accept all factual allegations in the complaint as true"[;] "*Second*, courts must consider the complaint in its entirety . . . [and determine] whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter . . ."[;] "*Third*, . . . the court must take into account plausible opposing inferences". *Id.* at 322-23 (internal citations omitted) (emphasis in original). Accordingly, for the Pension Fund to have adequately pleaded scienter: the allegations in the amended complaint must give rise to a "strong inference" that defendants acted with either an "intent to

8

deceive, manipulate, or defraud" or "severe recklessness"; and, that strong inference must be "at least as compelling as any opposing inference one could draw from the facts alleged". *See Mizzaro*, 544 F.3d at 1238 (citing *Tellabs*, 551 U.S. at 323-24).

The Pension Fund maintains here that the failure to timely describe the JV loans as being with recourse against TOUSA, as discussed *infra*, satisfies the scienter element. In that regard, the amended complaint alleges generally that defendants, because of their positions with TOUSA: controlled the content of TOUSA's SEC filings, press releases, and presentations to securities analysts, all of which were misleading because they described the JV loan, until March 2006, as "non-recourse" to TOUSA; were privy to non-public information concerning TOUSA's obligations under the guarantees; and knew TOUSA's public representations were materially false and misleading or were deliberately reckless in regard to the truth of the representations because the loan was not unequivocally "non-recourse" to TOUSA.

**1.**

The amended complaint fails to allege any direct evidence showing defendants acted with the requisite scienter. For example, there are no allegations they: did not reasonably believe the JV loan was "non-recourse" to TOUSA; ever told anyone or questioned whether the loan was not "non-recourse"; ever read the guarantees, much

9

less believed they required more extensive disclosure; thought any person at TOUSA was engaging in fraud; or had any reason to believe the guarantees represented a material risk for TOUSA and its investors. *See Rosenberg*, 554 F.3d at 966; *Mizzaro*, 544 F.3d at 1252.

In short, even if the loan was not "non-recourse" to TOUSA, the amended complaint fails to allege defendants knew that. As was the case in *Mizzaro*, the Pension Fund contends here only: due to defendants' positions with TOUSA and the size of the JV loan, they "*must have known about*" the alleged misleading nature of their statements. *Mizzaro*, 544 F.3d at 1250 (emphasis in original). There are no allegations in the amended complaint of communications from any of the defendants from which it can be inferred defendants knew the classification of the loan or description of the guarantees was misleading. *See id.* at 1247-48, 1250 ("Indeed, the amended complaint fails to cite even *one* communication of any kind from the individual defendants . . . that could reasonably be interpreted as ordering or even encouraging . . . fraud.") (emphasis in original). The amended complaint alleges no ""'red flags'" that would have alerted defendants that their non-recourse statements were materially false or misleading; instead, it "rests [only] 'on speculation and conclusory allegations'". *Rosenberg*, 554 F.3d at 966 (quoting *Garfield v. NDC*

10

*Health Corp.*, 466 F.3d 1255, 1265-66 (11th Cir. 2006)); *see also Mizzaro*, 544 F.3d at 1252.

**2.**

In the absence of direct evidence, the Pension Fund maintains here that facts alleged in the amended complaint circumstantially give rise to the requisite strong inference of scienter.  First, it alleged the $675 million loan equaled 70 percent of TOUSA's net worth, which was placed at risk "if the [JV] went bankrupt, became insolvent, or if any other conditions under the Guarantees were triggered".  Second, it alleged that "[d]efendants each actively participated in [TOUSA's] acquisition of Transeastern through the JV and were aware of the Guarantees as part of that transaction".  The Pension Fund maintains defendants' knowledge of the guarantees is demonstrated by the allegations regarding extensive documentation the Lenders required of TOUSA before, and after, the loan.  ("[T]he Credit Agreements required TOUSA and the . . . JV to provide the Lenders with a 'Borrowing Base Certificate' no later than 20 days after the last day of each calendar month".).  The Pension Fund contends here that, as a result, each defendant was likely required to produce numerous documents for the Lenders on behalf of TOUSA, and that this shows defendants knew their representations concerning the guarantees were misleading.

11

The Pension Fund ultimately maintains here that it is "exceedingly unlikely" defendants' repeated statements about the loan's being "non-recourse", while acting as TOUSA high-ranking officers, "were the result of merely careless mistakes at the management level based on false information fed it from below, rather than of an intent to deceive or a reckless indifference to whether the statements were misleading". *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 709 (7th Cir. 2008). Considering the amended complaint as a whole, however, its allegations are insufficient to give rise to a "strong inference" of either fraudulent intent or severe recklessness (the latter's being discussed further below) that is "at least as compelling as any opposing inference of" conduct that did not violate § 10(b). *See Tellabs*, 551 U.S. at 314.

**B.**

Regarding "severe recklessness", the Pension Fund maintains here that the allegations are sufficient to show such conduct. According to the Pension Fund, because there is no plausible explanation how a member of TOUSA senior management could have been unaware of the misleading nature of representing the loan as "non-recourse" to TOUSA, defendants were severely reckless. Such recklessness, however, is

12

> limited to those *highly unreasonable* omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an *extreme departure* from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Mizzaro*, 544 F.3d at 1238 (emphasis added) (internal citations omitted).

Considering the amended complaint as a whole, including the terms of the guarantees, it was not "highly unreasonable" or an "extreme departure from the standards of ordinary care" to describe the loan as non-recourse because more was required than TOUSA's simply being liable for the balance due on the JV loan if there was non-payment by the JV. The above-discussed conditions for the guarantees had to be triggered: JV default on the loans; losses arising from fraud, intentional misconduct, or waste and misappropriation; or voluntary bankruptcy filed by any party.

Even if the loan was not properly characterized as "non-recourse" to TOUSA, the amended complaint fails to sufficiently allege defendants were severely reckless by not being aware their statements could be perceived as false or misleading to the extent required, as defined above, for severe recklessness. An inference of severe recklessness is *not* as compelling as an inference that, at worst, defendants acted with

13

inexcusable negligence.  Restated, as quoted above, even that form of negligence does not constitute severe recklessness.  *Id.*

## III.

For the foregoing reasons, the judgment is AFFIRMED.