[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12830
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cv-81928-RLR


JAMES BAKER,

                                               Plaintiff-Appellant,

versus

JAMES BATMASIAN, d.b.a. Investments Limited, and
MARTA BATMASIAN, d.b.a. Investments Limited,

                                               Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 9, 2018)


Before JULIE CARNES, BLACK and HULL, Circuit Judges.

PER CURIAM:

James Baker appeals the district court's dismissal of his action seeking both damages under 26 U.S.C. § 7434 and relief under Florida law. Baker sued James and Marta Batmasian, claiming they were liable for an allegedly fraudulent tax filing issued by their company, Investments Limited. The district court dismissed Baker's claim under § 7434 with prejudice on alternative grounds. First, it concluded Baker defaulted by failing to respond to the Batmasians' argument that he lacked standing[1] to assert a claim under § 7434. Second, reaching the merits, it concluded Baker was not authorized to sue under the plain language of § 7434. Having dismissed Baker's sole federal claim, the district court declined to exercise supplemental jurisdiction over Baker's state-law claim. After review, we affirm on the basis that Baker is not authorized to sue under § 7434.[2]

---

[1] There appears to be some confusion among the parties regarding the issue of standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 & n.4 (2014) (clarifying that what is sometimes referred to as "statutory standing" is not actually a question of Article III standing but is instead a non-jurisdictional question of whether a particular plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under [the relevant statute]"). Although the district court's order elsewhere refers generally to "standing," and the Batmasians framed the issue as one of "standing" in their motion to dismiss, the district court's holding was based on its determination that Baker could not sue under "the plain wording of 26 U.S.C. § 7434(a)." We therefore interpret the district court's holding as being based on its conclusion that Baker was not "within the class of plaintiffs whom Congress has authorized to sue under [§ 7434]"—a holding that does not implicate Article III standing. *See id.* at 1387.

[2] Because we conclude Baker failed to state a claim under the statute, we need not determine whether the district court appropriately dismissed his complaint for failing to adequately respond to the Batmasians' arguments.

## I.  BACKGROUND

According to the amended complaint, Baker was employed as the controller of the Batmasians' company, Investments Limited.  During his employment, Baker (along with other employees) was misclassified as an independent contractor so the Batmasians could avoid payroll taxes.  To facilitate their scheme, the Batmasians required Baker to form his own corporation, Yawkey Consulting Group, Inc. (Yawkey), through which Baker was paid every other week.

When he was terminated in June 2013, Baker went to Marta Batmasian and the Batmasians' accountant, and he demanded they issue W-2 forms classifying him as an employee for tax years 2007 through 2013.  They refused and, instead, Investments Limited issued a 1099-MISC for tax year 2013 (using Yawkey's tax-identification number), addressed to:

> YAWKEY CONSULTING GROUP, INC.
>
> C/O JAMES BAKER
> [ADDRESS]

More than three years later, Baker sued the Batmasians under both the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and 26 U.S.C. § 7434.  Section 7434(a) states:  "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434(a).  Baker alleged the 1099-MISC was

3

fraudulent both because it should have been issued as a W-2 (listing him as an employee) and because it underreported the amount he was paid. In support of his claim, Baker attached a copy of the 1099-MISC received from Investments Limited.

The Batmasians moved to dismiss the case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing—among other things—that Baker lacked "standing" to sue for an allegedly fraudulent tax statement issued to Yawkey. Instead of responding to the motion, Baker amended his complaint and chose not to add Yawkey as a party. The Batmasians then filed another motion to dismiss, in which they again asserted Baker's lack of "standing."[3] Baker responded to the second motion, but his response did not directly address the arguments concerning whether he was authorized to sue under the statute.

The district court granted the motion to dismiss "for two reasons." First, it granted the motion by default under Southern District of Florida Local Rule 7.1(c), because Baker's response failed to address the Batmasians' argument concerning "standing." Second, the district court agreed with the Batmasians that, under "the plain wording of 26 U.S.C. § 7434(a)," Baker could not allege a claim, because he was not the "person" to whom the 1099-MISC purports payments were made. On

---

[3] The Batmasians also raised several alternative arguments, which they contend are additional grounds for affirming the district court's dismissal. Because the district court did not reach the merits of those arguments, and because we affirm on other grounds, we decline to address those alternative arguments.

the contrary, those payments were purportedly made to Yawkey. Thus, only Yawkey could assert a claim based on the allegedly fraudulent 1099-MISC.

The district court further noted its dismissal of Baker's federal claim was with prejudice, despite Baker's general request for leave to amend (embedded in his opposition to the motion to dismiss). Having dismissed Baker's only federal claim, the district court declined to exercise supplemental jurisdiction over Baker's state-law claim, dismissing it without prejudice. Baker timely appealed.

## II. DISCUSSION

Viewed liberally,[4] Baker's appeal raises the following issues: (1) whether the district court erred by concluding Baker failed to allege a claim under § 7434;

---

[4] Baker's principal brief enumerates only two issues for our review. The first, whether the district court erred in its interpretation of § 7434, is addressed in this opinion. The second, whether the district court erred by dismissing Baker's complaint for lack of jurisdiction and failure to join an indispensable party, is based on incorrect legal premises. As we noted earlier, the district court dismissed the complaint for failure to state a claim under Rule 12(b)(6), based on its conclusion that Baker was not within the class of plaintiffs Congress authorized to sue under § 7434. The district court held neither that Baker lacked standing to bring a claim under Article III of the Constitution nor that the district court otherwise lacked jurisdiction over Baker's federal claim. This is evident from the district court's dismissing the federal claim *with prejudice*—something it could not do if it lacked jurisdiction over the federal claim. It is likewise apparent from the district court's decision to invoke "its discretion not to exercise supplemental jurisdiction over [Baker's] state law claim." Supplemental jurisdiction requires federal jurisdiction in the first instance. *See Palmer v. Hosp. Auth. of Randal Cnty.*, 22 F.3d 1559, 1565 (11th Cir. 1994) ("Supplemental jurisdiction is, by its very nature, not original but additional; that is, it relies on the existence of some other original basis of jurisdiction."). Thus, if the district court dismissed Baker's federal claim for lack of jurisdiction, it would have had no discretion to exercise supplemental jurisdiction over the state-law claim. In addition, Baker's assertion that his complaint was dismissed for failure to join an indispensable party is simply incorrect. The district court dismissed the complaint because Baker (the only plaintiff) failed to state a federal claim. The fact the district court noted Baker declined to add Yawkey as a party does not mean the *dismissal* was based on that failure. In other words, the district court did not determine Baker's federal claim could not move forward because an indispensable party was not

5

and (2) whether the district court erred by denying leave to amend.[5]  We address

each in turn.

## A.  Failure to State a Claim[6]

Determining whether a plaintiff may bring a claim under a federal statute

"requires us to determine, using traditional tools of statutory interpretation,

whether [the] legislatively conferred cause of action encompasses [the] particular

plaintiff's claim."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.

Ct. 1377, 1387 (2014).  Put differently, the question we must answer is whether

Baker "falls within the class of plaintiffs whom Congress has authorized to sue

under [§ 7434]."  *Id.*  Answering that question requires "us to determine the

meaning of the congressionally enacted provision creating a cause of action."  *Id.*

at 1388.  In doing so, "[w]e do not ask whether in our judgment Congress *should*

have authorized [Baker's] suit, but whether Congress in fact did so."  *Id.*  This case

therefore "presents a straightforward question of statutory interpretation:  Does the

---

in the suit; it determined Baker's federal claim could not move forward regardless.  Baker's
decision not to add Yawkey had nothing to do with that holding.

[5] Baker further contends if this Court reverses, it "should also then reverse the dismissal
of the FDUTPA claim, and have the court hear it on remand, because it was dismissed on the
sole ground that the federal claim was dismissed."  Because we affirm, this issue is moot.

[6] We review de novo a district court's grant of a motion to dismiss for failure to state a
claim under Rule 12(b)(6), accepting as true all factual allegations in the complaint and
considering them in the light most favorable to the plaintiff.  *Ironworkers Local Union 68 v.
AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011).

cause of action in [§ 7434] extend to plaintiffs like [Baker]?" *Id.* We conclude it does not.

As with all questions of statutory interpretation, our inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." *Packard v. Comm'r* , 746 F.3d 1219, 1222 (11th Cir. 2014) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). Section 7434 states: "If any person willfully files a fraudulent information return with respect to *payments purported to be made to any other person*, such *other person* may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a) (emphasis added). The statute is unambiguous on the issue of who may bring a civil action for damages; it is the "other person" to whom payments were purportedly made according to the fraudulent information return. In this case, the allegedly fraudulent information return purports that payments were made to Yawkey. Nothing in the return indicates payments were made to Baker.[7] Indeed, Baker

---

[7] Baker misunderstands the meaning of "payments purported to be made" in § 7434. He argues "[t]he 'payments' were purported to be made to Baker (though actually issued via check in the name of Yawkey) and thus Baker, and not Yawkey, is the 'other person', ergo, Baker being the 'other person' can sue." Baker appears to suggest that, because he alleges the Batmasians purported to pay him as an independent contractor through Yawkey, the information return at issue is an information return "with respect to payments purported to be made to" Baker through Yawkey. Baker's interpretation of § 7434 is unreasonable; it ignores the relationship the statute implicitly draws between the information return and the payments purported to be made to the "other person." *See Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) ("Statutory language is ambiguous if it is susceptible to more than one reasonable interpretation, and a forced meaning does not create ambiguity." (citation and quotation omitted)); *Med. Transp. Mgmt. Corp. v. Comm'r*, 506 F.3d 1364, 1368 (11th Cir. 2007) (explaining that statutory language is ambiguous only if in "the specific context in which that

acknowledges the payments at issue were, in fact, made directly to Yawkey. Thus, if anyone is authorized to file a claim under § 7434, based on the information return attached to Baker's complaint, it is Yawkey.[8]

Adopting Baker's theory—that § 7434 authorizes his suit because the information return should have reflected payments that should have been made to him under a different employment classification—would require us to rewrite the text of the statute. In essence, Baker suggests the statute authorizes a suit by anyone adversely affected (whether directly or indirectly) by a fraudulent information return. While Congress could have written such a broad statute, it did not do so in § 7434.

Baker's attempt to pierce Yawkey's corporate veil fares no better. Regardless of whether Yawkey is a sham entity that otherwise would be unable to

---

language is used, and the broader context of the statute as a whole," the language "is susceptible to more than one reasonable interpretation" (quotation omitted)). In the context of § 7434, it is clear Congress intended the phrase "payments purported to be made" to refer to payments *the fraudulent information return* purports were made to another person. Here, the allegedly fraudulent statement purports those payments were made to Yawkey. Baker cannot bring himself within the statute's ambit by alleging whoever filed the information return purported something outside of the return. And while we find the statute's language unambiguous on this issue (and therefore need not look to other sources to divine legislative intent), the statute's legislative history—while relatively sparse—supports our interpretation. In its description of the problem § 7434 was intended to address, the House Report states: "Federal law provides no private cause of action *to a taxpayer* who is injured because *a fraudulent information return* has been filed with the IRS *asserting* that payments have been made *to the taxpayer*." H.R. Rep. No. 104-506, at 35 (1996) (emphasis added), *reprinted in* 1996 U.S.C.C.A.N. 1143, 1158.

[8] Because Baker is not the person to whom the information return purports payments were made, we need not reach the issue of whether § 7434 would otherwise authorize a suit for misclassification of one's employment status.

rely on its corporate form, Yawkey is the only "other person" the information return purports to have received payments.  Therefore, under the plain language of § 7434, Yawkey is the only "other person" entitled to bring a cause of action.  If Yawkey has no claim under § 7434, no one does.  And the authorities cited by Baker do not counsel a different result.

For example, Baker's reliance on *Moline Properties v. Commissioner*, 319 U.S. 436 (1943), and *United States v. Creel*, 711 F.2d 575 (5th Cir. 1983), is misplaced.  Those cases stand for the uncontroversial position that a sham entity may be disregarded *for purposes of attributing tax liability*.  In other words, a person may not avoid tax liability by incorporating a fraudulent entity, and the corporate form of the fraudulent entity may be disregarded for purposes of properly attributing that liability.  It does not follow, however, that a person may electively disregard the corporate form of his own entity (which he now claims is fraudulent) to assert claims that belong solely to the entity.

Finally, to the extent Baker argues the allegedly fraudulent information return was nevertheless issued to him because it was addressed to Yawkey, "c/o" Baker, that argument is also meritless.  A tax statement issued to a corporation, using that corporation's tax-identification number, is not issued to the person to whom it is sent "care of" any more than a summons issued "care of" a registered agent commands that agent to appear and defend a lawsuit.   We therefore

9

conclude the district court did not err by determining Baker cannot state a claim under § 7434.

## B.  Leave to Amend[9]

Baker next argues the district court abused its discretion by dismissing his case with prejudice and without leave to file a second amended complaint.  This contention lacks merit.  Baker's request for leave, which was embedded in his opposition to the motion to dismiss, merely stated:  "Baker paints an extremely convincing mosaic that he is the victim of fraud.  He requests 20 days leave to amend, if the Court believes otherwise."  He then reiterated that request at the conclusion of his opposition by stating:  "Baker respectfully request [sic] that this Court deny Defendants' Motion to Dismiss, but if not, give Baker 20 days leave to amend."

Under our precedent, Baker both failed to properly raise the issue of amendment and failed to comply with Federal Rule of Civil Procedure 7(b).  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("The shareholders also failed to comply with Federal Rule of Civil Procedure 7(b) when they failed to attach a copy of their

---

[9] We review for abuse of discretion a district court's decision to deny a request for leave to amend.  *Rosenberg v. Gould*, 554 F.3d 962, 965 (11th Cir. 2009).

proposed amendment or to describe the substance of their proposed amendment.").

Thus, the district court did not abuse its discretion by denying leave to amend.

## III.  CONCLUSION

We affirm the district court's dismissal of Baker's complaint.

**AFFIRMED.**