[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10080
_____

D.C. Docket No. 0:16-cv-60341-WPD


WILLIAM B. NEWTON,
NOREEN ALLISON,
individually and on behalf of all others similarly situated,

Plaintiffs – Appellants,

versus

DUKE ENERGY FLORIDA, LLC,
a Florida limited liability company,
FLORIDA POWER & LIGHT COMPANY,
a Florida profit corporation,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 11, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and STEELE,[*] District Judge.

TJOFLAT, Circuit Judge:

In 2006, the Florida Legislature enacted the Florida Renewable Energy Technologies and Energy Efficiency Act[1] (the "Act"). The Act authorized the Florida Public Service Commission ("PSC") to create a plan to incentivize energy utilities to invest in nuclear power plant construction. Fla. Stat. § 366.93(2). Acting on this authority, the PSC promulgated a regulation creating the Nuclear Cost Recovery System ("NCRS").[2] If a utility chooses to participate in the NCRS and receives PSC approval of its plant construction project, it may preemptively charge its customers through an electricity rate increase for "costs incurred in the siting, design, licensing, and construction" of the project through its completion. *Id.* Under the NCRS, the utility retains the funds generated by the rate increase even if the project is never completed.

This is a putative class action. The plaintiffs' class representatives, William Newton and Noreen Allison ("Plaintiffs"), claim that two provisions of the Act which authorize the NCRS, Florida Statutes §§ 366.93 and 403.519(4), are invalid

---

[*] Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

[1] 2006 Fla. Laws ch. 230.

[2] The original "Nuclear Power Plant Cost Recovery" regulation became effective on April 8, 2007. Since then, the regulation has been amended twice, most recently pursuant to changes to the Act that were passed by the Florida Legislature in 2013. *See* Fla. Admin. Code Ann. r. 25-6.0423.

under the Dormant Commerce Clause ("DCC"), which precludes a state from "regulat[ing] Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3, and "directly limits the power of the States to discriminate against interstate commerce." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273, 108 S. Ct. 1803, 1807 (1988). Plaintiffs also claim that the two provisions of the Act are preempted by the Atomic Energy Act of 1954,[3] 42 U.S.C. § 2011 *et seq.*, and the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594.[4]

Plaintiffs did not bring these claims against the State of Florida, the PSC (which is charged with implementing and administering the Act), or its members. Instead, they seek the Act's invalidation solely by suing two electric utilities, Duke Energy Florida and Florida Power & Light ("Utilities"), who have been collecting

---

[3] The Atomic Energy Act was one of Congress's earliest steps to establish the "dual regulation of nuclear-powered electricity generation" in which "the federal government maintains complete control of the safety and 'nuclear' aspects of energy generation" while "the states exercise their traditional authority over the need for additional generating capacity, the type of generating facilities to be licensed, land use, ratemaking, and the like." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 211–12, 103 S. Ct. 1713, 1726 (1983).

[4] Plaintiffs invoked the District Court's federal question jurisdiction. 28 U.S.C. § 1331. They also invoked the Court's supplemental jurisdiction under 28 U.S.C. § 1367 by alleging a claim of unjust enrichment under Florida law. After dismissing Plaintiffs' federal claims, the Court declined to exercise its supplemental jurisdiction and did not decide the unjust enrichment claim. Plaintiffs argue that the Court abused its discretion in doing so because the claim arises under federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368 (2005). Not so. This claim is not within the "special and small category" of state law claims which arise under federal law within the meaning of 28 U.S.C. § 1331. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121, 2136 (2006); *see also Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 1065 (2013) (describing the category of *Grable* claims as "slim"). We therefore affirm the Court's dismissal of the unjust enrichment claim without prejudice.

rate increases from them and their class members for nuclear plant construction that has been discontinued.

Utilities separately moved the District Court to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on numerous grounds. As to the DCC claim, Utilities argued that if a cause of action lies under the DCC, it belongs to the States that may have been injured due to Florida's regulation of interstate commerce and not to Plaintiffs, who are Florida utility customers. Utilities also argued that they are private parties, not state actors, and, as such, could not have violated the DCC. As to the preemption claims, Utilities argued that they failed for numerous reasons, including that preemption is a *defense*, not a claim for relief.[5] Utilities also argued that the preemption claims failed on the merits.

The District Court dismissed Plaintiffs' DCC claim for lack of "prudential standing" because Plaintiffs were not in the "zone of interests" protected by the Clause.[6] *See Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). It dismissed

---

[5] Plaintiffs do not assert a claim for relief under the Atomic Energy Act or the Energy Policy Act.

[6] Although the District Court did not state whether the dismissal of the DCC claim was pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), we treat it as having been made under Rule 12(b)(6). The Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377 (2014), effectively abolished prudential standing (sometimes referred to as statutory standing) as a jurisdictional doctrine that would give rise to a Rule 12(b)(1) dismissal without prejudice. Under *Lexmark,* the question is whether Plaintiffs have a valid cause of action, and "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction." *Id.* at ___, 134 S. Ct. at 1387 n.4 (quoting *Verizon Md.,*

4

Plaintiffs' preemption claims based on the Atomic Energy Act and the Energy Policy Act on the ground that neither act created a cause of action, express or implied.[7] The Court dismissed Plaintiffs' claims without granting leave to amend.

Plaintiffs moved the District Court for reconsideration pursuant to Federal Rule of Civil Procedure 60(b). The motion focused on the Court's dismissal of their claims without leave to amend. Citing Federal Rule of Civil Procedure 15(a)(2), which states that "[t]he court should freely give leave [to amend] when justice so requires," Plaintiffs argued that they could cure the deficiencies in their complaint if given leave to join the State of Florida as a defendant and to prosecute their claims against Utilities under 42 U.S.C. § 1983 on the ground that, in increasing their rates under the NCRS, Utilities acted under color of state law.

The District Court denied the Rule 60(b) motion. Its reading of the motion was that Plaintiffs were seeking to bolster their claims against Utilities by joining the State as a defendant. This would be futile. "Simply joining the State as a party," the Court explained, "would not suddenly empower Plaintiffs to bring constitutional claims against private entities, such as [Utilities]." Dist. Ct. Ord.

---

*Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43, 122 S. Ct. 1753, 1758 (2002)); *see also Bank of Am. Corp. v. City of Miami*, 581 U.S. ___, 137 S. Ct. 1296, 1302 (2017) ("The question is whether the [provision] grants the plaintiff the cause of action that he asserts."). As we explain later, the District Court correctly dismissed the DCC claim under Rule 12(b)(6).

[7] The District Court dismissed these claims under Federal Rule of Civil Procedure 12(b)(6).

Denying Mot. for Reconsideration at 4.  The Court did not expressly respond to Plaintiffs' request to bring their DCC claim against Utilities under § 1983, but it implicitly rejected the request in stating that Utilities were not acting under color of state law in participating in the NCRS.

Plaintiffs appeal the District Court's judgment, arguing that the allegations of their complaint were sufficient to make out their DCC claim and their preemption claim under the Atomic Energy Act.[8]  They also appeal the Court's denial of their Rule 60(b) motion, arguing that the Court abused its discretion in denying the request for leave to amend asserted in the motion.

## I.

We review *de novo* the dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6).  *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1147 n.9 (11th Cir. 2017).  In this posture, we accept the factual allegations supporting a claim as true and draw all reasonable inferences in favor of the nonmovant.  *West v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1289, 1296 (11th Cir. 2017).  We review a district court's denial of leave to amend under the abuse of discretion standard. *Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 493 (11th Cir. 1993).  With these principles in hand, we turn to the dismissal of Plaintiffs' DCC claim, then to their

---

[8] Plaintiffs also appeal the dismissal of their unjust enrichment claim.  *See supra* note 4. Plaintiffs do not appeal the District Court's dismissal of their preemption claim based on the Energy Policy Act.

preemption claim under the Atomic Energy Act.  After that, we consider the denial of leave to amend.

## II.

## A.

The "modern law" of the DCC is "driven by concern about 'economic protectionism,'" or, in other words, "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38, 128 S. Ct. 1801, 1808 (2008) (quoting *New Energy*, 486 U.S. at 273, 108 S. Ct. at 1807).  If a state law unduly burdens competition in another state, the law may be unconstitutional under the DCC.  The injury contemplated by the DCC, then, is that of an out-of-state person or entity harmed by some *other* state's action.

This is far from the case here.  Plaintiffs are Florida electric utility customers.  Utilities are Florida companies.  Utilities are not "states" such that their actions could give rise to DCC claims from an out-of-state person or entity.  Plaintiffs' interests are well beyond the zone the DCC is meant to protect.[9]  *See*

---

[9] We do not mean to say that an in-state plaintiff can *never* assert a DCC claim against its own state's law or regulation.  That would be incorrect.  *See, e.g., Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1255–56 (11th Cir. 2012).  Rather, here, where Plaintiffs are customers in a non-competitive marketplace—subject to regulated monopolies—and Utilities are similarly not subject to competition from out-of-state nuclear energy providers, the DCC simply "has no job to do."  *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 303, 117 S. Ct. 811, 826 (1997).

*Harris*, 20 F.3d at 1121.  For these reasons, we affirm the dismissal of Plaintiffs'

DCC claim under Rule 12(b)(6).

B.

Next, we turn to Plaintiffs' preemption claim.  It is well-settled that there are

three types of preemption:

> First, Congress has the authority to expressly preempt state law by statute.  Second, even in the absence of an express preemption provision, the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.  Third, federal and state law may impermissibly conflict, for example, where it is impossible for a private party to comply with both state and federal law, or when the state law at issue stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1293 (11th Cir. 2017) (en

banc) (Tjoflat, J., dissenting) (citations and quotations omitted) (alterations

accepted).  Plaintiffs rely on the second of these, commonly referred to as "field

preemption," and argue that the Atomic Energy Act established the federal

government as the exclusive authority to regulate the construction of nuclear power

plants such that they may sue to establish preemption.

A claim that a plaintiff asserts under state law, in a field that is completely

preempted, necessarily arises under federal law.  *See, e.g.*, *Borrero v. United*

*Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301 (11th Cir. 2010) (addressing

complete preemption under ERISA).  Despite preemption's usual character as a

8

defense, we have jurisdiction to consider Plaintiffs' claim for injunctive relief here. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 2899 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1262 (11th Cir. 2012) (holding that there exists "an implied right of action to assert a preemption claim seeking injunctive relief") (citations and internal quotation marks omitted).

Therefore, we address the merits of the claim. In *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 103 S. Ct. 1713 (1983), the Supreme Court turned away a preemption challenge to a California law that conditioned the construction of nuclear power plants on findings by a state commission that adequate storage facilities and means of disposal were available for nuclear waste. The Court first explained that "the federal government has occupied the entire field of nuclear *safety* concerns."[10] *Id.* at 212, 103 S. Ct. at 1726 (emphasis added). But the Court concluded that there was an economic (and non-safety) rationale for the California law, and this was

---

[10] The *Pacific Gas* Court also described the balance between state and federal regulation of nuclear energy production that the Atomic Energy Act codified. *See supra* note 3.

9

enough to save it from preemption. *See id.* at 216, 103 S. Ct. at 1728 ("[W]e accept California's avowed economic purpose as the rationale for enacting § 25524.2. Accordingly, the statute lies outside the occupied field of nuclear safety regulation."). The Court also rejected a preemption claim based on the theory that the California law frustrated the purpose of the Atomic Energy Act, which is to promote the use of nuclear power. According to the Court, Congress left states room to determine, for economic reasons, whether a nuclear plant or a fossil-fuel plant, for example, should be built. *See id.* at 221–22, 103 S. Ct. at 1731.

Where, as here, the federal government has occupied a portion of a given field, "the test of preemption is whether the matter on which the state asserts the right to act is in any way regulated by the federal government." *Id.* at 213, 103 S. Ct. at 1727 (citation and internal quotation marks omitted). The NCRS is based on an economic rationale—whether flawed or not—that utilities like Duke Energy Florida and Florida Power & Light should be able to recoup from their customers the costs associated with a project for the construction of a nuclear power plant, and that they should not have to return the funds received even if the project is not completed. *See Smalley v. Duke Energy Fla., Inc.*, 154 So. 3d 439, 440 (Fla. Dist. Ct. App. 2014).

10

Plaintiffs point to no cases holding (nor authorities suggesting) that state laws promoting investment in new nuclear plants, or shifting the costs of nuclear plant construction, are preempted by the Atomic Energy Act.  That failure is not surprising given the language of 42 U.S.C. § 2021(k) ("Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.").

Plaintiffs do cite 42 U.S.C. § 2209 for the proposition that the Atomic Energy Act "specifically prohibits [commercial] reactors from receiving subsidies."  Br. for Plaintiffs at 27 & n. 91.  But § 2209 says only that "[n]o funds of the [Atomic Energy] Commission shall be employed in the construction or operation" of commercial nuclear reactors.  42 U.S.C. § 2209.  As the NCRS does not involve Commission funds, § 2209 does not help Plaintiffs.  Therefore, we hold that the Atomic Energy Act does not preempt the NCRS. [11]

## C.

Finally, we consider whether the District Court abused its discretion in denying Plaintiffs' request for leave to amend their complaint.  Plaintiffs first expressed a desire to amend the complaint in the memorandum they filed in

---

[11] We held in *Liesen v. Louisiana Power & Light Co.*, 636 F.2d 94, 95 (5th Cir. Unit A Feb. 2, 1981), that the general enforcement provision of the Atomic Energy Act, 42 U.S.C. § 2271, does not create a private right of action.  Because Plaintiffs are not seeking enforcement of the Act pursuant to § 2271, *Liesen* does not bar their preemption claim.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that Fifth Circuit decisions issued on or before September 30, 1981 are binding precedent in this Circuit).

opposition to Duke Energy Florida's Rule 12(b) motion to dismiss.  In the event the Court granted Utilities' motions, they said, the Court should give them leave to amend their DCC claim in order to seek relief under § 1983 on the theory that Utilities were acting under color of state law in raising their electricity rates.

Standing alone, the request possessed no legal effect for two reasons.  First, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."  *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (quoting *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)) (alteration in original).  Second, "[a] request for a court order must be made by motion.  The motion must be in writing unless made during a hearing or trial."  Fed. R. Civ. P. 7(b)(1).  And it must "state with particularity the grounds for seeking the order[,] and state the relief sought."  *Id.*  Plaintiffs' inclusion of the request for leave in their opposition to a motion to dismiss did not constitute a "motion" and thus did not comply with this Rule 7(b) command.

Plaintiffs did request leave to amend in their Rule 60(b) motion.  The question arises as to whether the request they made in opposing the Rule 12(b)(6) dismissal of the DCC claim provided any support for the request they made in the Rule 60(b) motion.  The answer is no.  The request made in opposing the motion to dismiss the DCC claim is irrelevant.  But did Plaintiffs' inclusion of a request for

12

leave to amend within their Rule 60(b) motion comport with the Rule 7(b) motion requirement?  Yes.  *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1075 (11th Cir. 2017) (explaining that plaintiffs may seek leave to amend in motions made pursuant to Federal Rules of Civil Procedure 59(e) or 60(b)(6)).

Was the request for leave to amend legally sufficient?  That depends on what the request did or did not contain.  When moving the district court for leave to amend its complaint, the plaintiff must "set forth the substance of the proposed amendment or attach a copy of the proposed amendment" to its motion.  *Cita Tr.,* 879 F.3d at 1157 (quoting *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999)).  The substance of the proposed amendment serves as the functional equivalent of a copy of the proposed amendment if it is sufficient on its face to inform the Court of the proposal.  Plaintiffs did not attach a proposed amended complaint to their Rule 60(b) motion, so for their request for leave to be legally efficacious, the Rule 60(b) motion must have set forth sufficiently the substance of Plaintiffs' proposed amendment.  To that end, Plaintiffs said this:

> First, Plaintiffs could have cured the state action defect by naming the State as a defendant to their Commerce Clause challenge, or the Court itself could have simply ordered the State to join the lawsuit. Plaintiffs also could have amended the Complaint to include allegations that Defendants acted under color of law.  The state action requirement of § 1983 is satisfied by the State of Florida's active encouragement of Defendants' participation in the Nuclear Cost Recovery Statute (NCRS) to fulfill state energy goals.

13

Plaintiffs' Mot. for Reconsideration at 2. On its face, this statement barely scratches the surface of what Plaintiffs' amended complaint would state. It merely hypothesizes, in broad strokes, the kinds of amendments that Plaintiffs *might* have been able to make. It clearly does not satisfy *Cita Trust*'s requirement. In addition, neither the State of Florida nor its agencies could be named in or added to the lawsuit without violating the Eleventh Amendment, and neither the State of Florida nor its agencies are "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304 (1989). For these reasons, the District Court did not abuse its discretion in denying Plaintiffs leave to amend.

### III.

There is no merit in Plaintiffs' appeal. Plaintiffs' complaint failed to state a claim for relief. Fed. R. Civ. P. 12(b)(6). The judgment of the District Court is accordingly affirmed.

**AFFIRMED.**